# NO. 12-22-00132-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSEPH ORLANDO WHITAKER,*<br>*APPELLANT* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Joseph Orlando Whitaker appeals the trial court's judgment adjudicating guilt for the offense of unlawful possession of a firearm by a felon. He raises three issues on appeal. We dismiss the appeal for want of jurisdiction in part and affirm in part.

## BACKGROUND

Appellant was indicted in 2019 for the offense of unlawful possession of a firearm by a felon. The trial court deferred finding Appellant "guilty," placed him on deferred adjudication community supervision for five years, and assessed a $1,000 fine.

In February 2022, the State filed a motion to adjudicate Appellant's guilt, alleging that he violated the terms of his community supervision in eleven respects.

Appellant pleaded "not true" to the allegations in the State's motion. At the ensuing hearing, the trial court found that five of the allegations against Appellant were "true" and the remaining six were "not true."

Accordingly, the trial court found Appellant "guilty" of the offense, revoked his community supervision, sentenced him to imprisonment for ten years, and assessed a $774 fine. Appellant filed a motion for new trial and requested a hearing on the motion. The trial court denied Appellant's motion, and this appeal followed.

Appellant argues in his first issue that the trial court abused its discretion by denying his request for a hearing on his motion for new trial and he is entitled to a new trial because the record fails to show he executed a written jury trial waiver.

## Standard of Review

We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion. *Hobbs v. State*, 298 S.W.3d 193, 200 (Tex. Crim. App. 2009). Such a hearing is not an absolute right. *Id.* at 199. However, a court abuses its discretion by failing to hold a hearing if the motion and accompanying affidavits (1) raise matters that are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id.* A motion for new trial must be supported by an affidavit specifically setting out the factual basis for the claim. *Id.* If the affidavit is conclusory, is unsupported by facts, or fails to provide the requisite notice of the claimed basis for relief, no hearing is required. *Id.* To be entitled to a hearing on a motion for new trial alleging ineffective assistance of counsel, a defendant must allege sufficient facts from which a court could reasonably conclude both that (1) counsel failed to act as a reasonably competent attorney and (2) but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different. *Smith v. State*, 286 S.W.3d 333, 340–41 (Tex. Crim. App. 2009).

In reference to the trial court's grant or denial of the motion itself, we review that determination for an abuse of discretion. *State v. Gutierrez*, 541 S.W.3d 91, 97–98 (Tex. Crim. App. 2017); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). A trial court is given wide latitude in making the decision to grant or deny a motion for new trial. *State v. Boyd*, 202 S.W.3d 393, 401 (Tex. App.—Dallas 2006, pet. ref'd). As the sole factfinder and judge of the credibility and weight of each piece of evidence, whether presented during live testimony or in affidavits, a trial court is within its right to disbelieve any of the assertions upon which the appellant's claims of ineffective assistance of counsel are based, so long as the basis for that disbelief is supported by at least one reasonable view of the record. *Odelugo v. State*, 443 S.W.3d 131, 137 (Tex. Crim. App. 2014). This is true even when the state does not deign to controvert the evidence, whatever the type, that the appellant presents. *See id.*

In reviewing a ruling on a motion for new trial, we apply a deferential standard of review. *Najar v. State*, 618 S.W.3d 366, 372 (Tex. Crim. App. 2021). We afford almost total deference

to a trial court's fact findings, view the evidence in the light most favorable to the court's ruling, and reverse the ruling only if no reasonable view of the record could support it. **State v. Thomas**, 428 S.W.3d 99, 104 (Tex. Crim. App. 2014). In the absence of express findings, we presume all findings in favor of the prevailing party. **Najar**, 618 S.W.3d at 371.

**Denial of Hearing on Appellant's Motion for New Trial**

Appellant first contends that the trial court abused its discretion when it denied his request for a hearing on his motion for new trial. However, the grounds in the motion relate solely to allegations of ineffective assistance of counsel at the original plea proceeding where the trial court deferred a finding of guilt and placed him on deferred adjudication community supervision. The entirety of the substantive portion of Appellant's motion for new trial states as follows:

> 1. Defendant's former counsel['s] performance was ineffective in failing to explain the difference between deferred adjudication and probation.
>
> 2. Defendant's former attorney['s] performance amounted to ineffective assistance of counsel for not having thoroughly investigated the evidence prior to advising his client to plead guilty. **Ex parte Briggs**, 187 S.W.3d 458 (Tex. Crim. App. 2014).
>
> 3. Defendant's former attorney's performance amounted [to] ineffective assistance of counsel for he had no trial strategy other than allowing Defendant to plead guilty. **Menefee v. State**, 175 SW.3d 500.
>
> 4. Defendant's former attorney's performance amounted to ineffective assistance of counsel for he failed to perform basic defense functions. **Cannon v. Slate**, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008).

Appellant's counsel executed an affidavit attached to the motion, in which he generally alleged under oath "that the factual assertions in this motion for new trial, and of which I have personal knowledge, are true and correct, and which under controlling case law are clearly sufficient to entitle [Appellant] to an evidentiary hearing on the allegations in this motion."

All these grounds for new trial pertain to Appellant's former counsel's alleged ineffective assistance prior to or during the original plea proceeding in which the trial court placed him on deferred adjudication community supervision. A defendant placed on deferred adjudication community supervision may raise issues relating to the original plea proceeding only in appeals taken when deferred adjudication community supervision is first imposed. **Manuel v. State**, 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999). Ineffective assistance of counsel claims relating to

the representation during that time period fall within the categories of issues that must be raised when deferred adjudication community supervision first is imposed.[1] *See Jordan v. State*, 54 S.W.3d 783, 785 (Tex. Crim. App. 2001); *Pena v. State*, 551 S.W.3d 367, 370 (Tex. App.—Amarillo 2018, no pet.); *Gavin v. State*, 404 S.W.3d 597, 605 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Appellant's grounds for new trial relate to the portion of the proceeding in which the trial court placed Appellant on deferred adjudication community supervision, but the motion for new trial was not filed until the trial court adjudicated his guilt and revoked his community supervision. It is too late for Appellant to assert a motion for new trial on such grounds. *See, e.g.*, *Manuel*, 994 S.W.2d at 661–62. The appropriate disposition of this portion of Appellant's first issue is to dismiss it for want of jurisdiction. *See Manuel v. State*, 981 S.W.2d 65, 67 (Tex. App.—Fort Worth 1998), *aff'd*, 994 S.W.2d 658 (dismissing appeal for want of jurisdiction; approved by Texas Court of Criminal Appeals). Furthermore, it is axiomatic that since we are without jurisdiction to consider the ineffective assistance of counsel claims identified in his motion for new trial, Appellant likewise is not entitled to a hearing on the motion for new trial.

In any event, Appellant's motion for new trial would not support his entitlement to a hearing even if we were to review it. Whether counsel failed properly to advise Appellant, thus rendering his performance ineffective, is not determinable from the record. Appellant was required to show that his motion for new trial and accompanying affidavit "allege facts that would reasonably show that his counsel's representation fell below the standard of professional norms and that there is a reasonable probability that, but for his counsel's conduct, the result of the proceeding would have been different." *Smith*, 286 S.W.3d at 341.

Here, Appellant's allegations are conclusory and do not specifically set out a factual basis from which the trial court could conclude that his counsel failed to act as a reasonably competent attorney and that, but for his counsel's conduct, the result of the proceeding would have been different. *See Hobbs*, 298 S.W.3d at 199; *Smith*, 286 S.W.3d at 341. Because Appellant failed to allege facts from which the trial court reasonably could conclude that his counsel was

---

[1] We note that a void judgment is an exception to the general rule that an original plea cannot be attacked on an appeal of the revocation proceedings. *Nix v. State*, 65 S.W.3d 664, 667 (Tex. Crim. App. 2001), *abrogation on other grounds recognized by Wright v. State*, 506 S.W.3d 478, 482 (Tex. Crim. App. 2016). We discuss this exception later in this opinion. There is also a habeas corpus exception that does not apply here. *See Wright*, 506 S.W.3d at 481–82; *see also Jordan v. State*, 54 S.W.3d 783, 785 (Tex. Crim. App. 2001) (explaining habeas corpus exception).

deficient and that deficiency prejudiced his defense, we conclude the trial court did not abuse its discretion by failing to hold a hearing on Appellant's motion for new trial. *See Hobbs*, 298 S.W.3d at 200; *Smith*, 286 S.W.3d at 340-41; *see also Proud v. State*, No. 12-21-00137-CR, 2022 WL 2836271, at *2 (Tex. App.—Tyler July 20, 2022, pet. ref'd) (mem. op., not designated for publication) (analyzing similar allegations and concluding that motion for new trial and supporting affidavit did not support hearing on motion).

**Jury Trial Waiver**

In the remaining portion of Appellant's first issue, he contends that the record does not show that he executed a written jury trial waiver as part of his original plea proceeding. We recognize that this issue also relates to the original plea proceeding, we generally lack jurisdiction on those types of claims, and the issue ordinarily is unreviewable at this juncture along with the other issues raised by Appellant in his motion for new trial. *See, e.g.*, *Manuel*, 994 S.W.2d at 661–62.

However, Appellant attempts to cast this portion of his first issue as a complete absence of a jury waiver, which he contends is a structural error that may be raised at any time. Specifically, a defendant has an absolute right to a jury trial, and as a matter of federal constitutional law, the State must establish, on the record, a defendant's express, knowing, and intelligent waiver of jury trial. *See Rios v. State*, No. PD-0441-21, 2022 WL 17481021, at *11-12 (Tex. Crim. App. Dec. 7, 2022) (holding defendant did not knowingly and intelligently waive his right to jury trial and, as matter of first impression, violation of right to jury trial is structural error); *see also Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009).

In the event that our review of this issue could be construed to fall within the "void judgment" exception and, therefore, outside the scope of the ordinary rule in *Manuel* as discussed above, we nevertheless conclude that Appellant's jury trial waiver issue lacks merit. *See Nix*, 65 S.W.3d at 667 (discussing void judgment exception to requirement that issues related to original plea proceeding must be appealed at that time).

"A jury waiver is never presumed from a silent record, at least on direct appeal." *Munguia v. State*, 636 S.W.3d 750, 757 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (citing *Samudio v. State*, 648 S.W.2d 312, 314 (Tex. Crim. App. 1983)). That said, we do not have a silent record before us in this appeal. *See Munguia*, 636 S.W.3d at 757. Here, the trial court's order placing Appellant on deferred adjudication community supervision recited that

Appellant, in open court, expressly waived his right to a jury trial in writing. It is true that the written waiver is not in the record. However, "the recitation of a waiver of jury trial is sufficient to establish the waiver of appellant's constitutional right to a jury trial, unless there is direct proof of its falsity." *Id.* at 758. This is because "[t]he presumption of regularity applies to all judgments, including form judgments." *Id.* at 759 (citing *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (op. on reh'g)). After reviewing the record, we conclude that there is no direct proof of falsity in the trial court's recital that Appellant waived his right to a jury trial. As a result, we hold there is no structural federal constitutional error.

The Texas Court of Criminal Appeals' recent decision in *Rios* does not alter this result, and its facts are critically distinguishable from the facts before us. In *Rios*, the defendant, who spoke only Spanish, pleaded "not guilty," it was undisputed he never signed a written waiver, he was not admonished about his right to a jury trial, and the right was never discussed in open court. *Rios*, 2022 WL 17481021 at *1, 9. Moreover, in *Rios*, the waiver merely stated that "Defendant waived the right of trial by jury and entered the plea indicated above." *Id.* at *10.

Here, the order placing Appellant on community supervision recited that Appellant "in writing in open Court having waived [Appellant's] right of trial by jury, such waiver being with the consent and approval of the Court and District Attorney, now entered of record on the minutes of the Court, [Appellant] pleaded **guilty** to the charge contained in the **indictment**." Appellant signed this order and by doing so, also acknowledged that he received a copy of the order and conditions of community supervision, both were explained to him, and he understood them. The docket sheet also notes that Appellant waived his right to a jury trial and pleaded "guilty."

However, as a matter of Texas statutory law, Appellant's jury trial waiver must be "in writing in open court with the approval of the court and the State." *Clark v. State*, 592 S.W.3d 919, 931 (Tex. App.—Texarkana 2019, pet. ref'd) (citing Tex. Code Crim. Pro. Ann. art. 1.13(a) (West Supp. 2022)). As we have stated, the written waiver is not in the record. An error to fulfill this statutory requirement is distinct from the federal constitutional structural error of failing to procure any waiver, which must be expressly, knowingly, and intelligently made. "Failure to comply with Article 1.13(a) is statutory error subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure, which requires us to disregard error that does not affect a defendant's substantial rights." *Clark*, 592 S.W.3d at 931 (citing *Johnson v. State*,

6

72 S.W.3d 346, 348–49 (Tex. Crim. App. 2002) (citing TEX. R. APP. P. 44.2(b)). We recognize that Rule 44.2(b) focuses on the harm requirement. Nevertheless, it is unclear whether the timeliness requirement in *Manuel* must be satisfied for this Court to address the statutory, written, jury waiver component of Appellant's first issue. This nonconstitutional, statutory error occurred during the original plea proceeding in which the trial court placed Appellant on deferred adjudication community supervision. Accordingly, we conclude that *Manuel* applies, Appellant should have appealed that particular component of this issue at that time, and his decision to wait until after the trial court adjudicated his guilt is untimely. *See, e.g.*, *Manuel*, 994 S.W.2d at 661–62.

In any event, assuming arguendo that we would be required to address the statutory error component of this issue, we conclude that the error to include the actual written waiver in the record did not affect Appellant's substantial rights. As we have stated, to determine if Appellant was harmed by the purported failure to execute a written waiver, we ascertain whether he understood his right to trial by jury. *Clark*, 592 S.W.3d at 932 (quoting *Johnson*, 72 S.W.3d at 348–49). Because a recital of a jury trial waiver is "binding in the absence of direct proof of [its] falsity," statements made in the recital shed light on the question of whether a defendant has understood his right to a jury trial. *Id.* (alteration in original) (quoting *Johnson*, 72 S.W.3d at 349).[2] Here, we conclude that the trial court's recital, which was binding since there was no direct proof of its falsity, showed that Appellant knew of his right to a jury trial and intentionally relinquished that right. Our conclusion is supported by the record, which reflects that Appellant signed the order and acknowledged that he received both the order and terms of his community supervision, the order was explained to him, and understood it. As a result, we conclude that Appellant's substantial rights were not affected by the lack of a written jury trial waiver. *See Tanner v. State*, No. 06-22-00030-CR, 2022 WL 3567909, at *2 (Tex. App.—Texarkana Aug. 19, 2022, no pet.) (mem. op., not designated for publication) (analyzing statutory jury waiver argument in similar circumstances and holding defendant's substantial rights unaffected by error).

---

[2] For example, the Texas Court of Criminal Appeals has concluded that a judgment's recital that a defendant waived his right to a jury trial "presumes [a defendant's] knowledge, because 'to waive a right one must do it knowingly—with knowledge of the relevant facts.'" *Clark v. State*, 592 S.W.3d 919, 932 (Tex. App.—Texarkana 2019, pet. ref'd) (quoting *Johnson v. State*, 72 S.W.3d 346, 349 (Tex. Crim. App. 2002)). "In addition, 'waiver' is defined as 'the act of waiving or intentionally relinquishing or abandoning a known right, claim, or privilege.'" *Clark*, 592 S.W.3d at 932 (quoting *Johnson*, 72 S.W.3d at 349).

Appellant's first issue is overruled.

## FIFTH AMENDMENT WAIVER

In his second issue, Appellant argues that the trial court's instruction regarding his wish to testify caused him to forego testifying for the limited purpose of establishing what he describes as an affirmative defense of his inability to pay the various fees and costs associated with his community supervision, which failure to pay was among the several allegations comprising the State's motion to adjudicate guilt.

### Standard of Review

We review the trial court's decision to revoke community supervision for an inappropriate reason, such as a violation of the defendant's Fifth Amendment privilege against self-incrimination or a waiver thereof, for an abuse of discretion. *See Pena v. State*, 508 S.W.3d 599, 604 (Tex. App.—El Paso 2016, pet. ref'd). If the trial judge was correct under any theory of law applicable to the case, we will uphold the judge's decision. *See Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010) (applying standard in waiver of Fifth Amendment privilege context). We do this even if the trial judge failed to give any reason or used the wrong reason for the ruling. *Id.*

### Applicable Law

The Fifth Amendment privilege against self-incrimination, which is binding upon the states through the Fourteenth Amendment, provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V; *Reese v. State*, 877 S.W.2d 328, 335 (Tex. Crim. App. 1994). A concurrent right exists under the Texas Constitution. TEX. CONST. art. I, § 10. The purpose of the right against self-incrimination is to prohibit compulsion of testimony which may expose a person to criminal prosecution. *Reese*, 877 S.W.2d at 335. "It is well settled that the Fifth Amendment insulates probationers from compelled self-incrimination." *Dansby v. State* (*Dansby I*), 398 S.W.3d 233, 239 (Tex. Crim. App. 2013). This right, however, can be waived if done knowingly, voluntarily, and intelligently, and might be done by conscious decisions of trial strategy. *See Brown v. State*, 617 S.W.2d 234, 236 (Tex. Crim. App. 1981); *Taylor v. State* 474 S.W.2d 207, 211 (Tex. Crim. App. 1971).

Although a criminal defendant cannot be compelled to testify, the general rule is that if he exercises his right to testify, he is subject to the same rules of examination and cross-examination as any other witness. *See* ***Felder v. State***, 848 S.W.2d 85, 99 (Tex. Crim. App. 1992); ***Cantu v. State***, 738 S.W.2d 249, 255 (Tex. Crim. App. 1987). The scope of cross-examination in Texas is "wide open," and once a defendant decides to testify, he opens himself up to cross-examination on any relevant subject matter. ***Felder***, 848 S.W.2d at 99. This means that a defendant may be "contradicted, impeached, discredited, attacked, sustained, bolstered, made to give evidence against himself, cross-examined as to new matters, and treated in every respect as any other witness," except when there are overriding constitutional or statutory provisions. ***Bowley v. State***, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010); ***Sanchez v. State***, 707 S.W.2d 575, 577 (Tex. Crim. App. 1986).

**Discussion**

Appellant desired to testify at the revocation hearing concerning his inability to pay the fees and costs assessed as part of the terms of his community supervision. Appellant believed that his inability to pay was an affirmative defense that he must prove. The trial court twice admonished Appellant concerning the consequences of a decision to testify, explaining that he is "wide open to cross examination. He can't pick and choose what he testifies on." Consequently, Appellant decided not to testify. Appellant contends that this instruction precluded him from proving his affirmative defense.

First, in contravention of Appellant's contention, we note that whether he had the ability to pay the costs and fees no longer is an affirmative defense. Between 1977 and 2007, the statute provided for an affirmative defense as to the defendant's ability to pay such costs and fees, with the burden of proof to be carried by the defendant, not the state. *See* ***Gipson v. State***, 383 S.W.3d 152, 158 (Tex. Crim. App. 2012) (***Gipson I***) (citing former TEX. CODE CRIM. PROC. ANN. art. 42.12 § 8(c), Act of June 10, 1977, 65th Leg., R.S., ch. 342 (S.B. 32) § 2, 1977 Tex. Gen. Laws 909).

In 2007, however, the Legislature amended the statute to remove the affirmative defense language and instead placed the burden of proof on the State to prove, by a preponderance of the evidence, that a defendant had the ability to pay and did not pay any of the court costs or

community supervision fees.[3]  *See* former TEX. CODE CRIM. PROC. ANN. 42.12 § 21(c), Act of June 15, 2007, 80th Leg., R.S., ch. 604 (H.B. 312), § 1, 2007 Tex. Gen. Laws 1160 (current version at TEX. CODE CRIM. PROC. ANN. art. 42A.751(i)); *see also **Bryant v. State***, 391 S.W.3d 86, 93 n.7 (Tex. Crim. App. 2012) (discussing history of the ability-to-pay statute).

Even if he were deprived of his right to testify for the limited purpose of providing evidence of his inability to pay the fees and costs, he was not harmed thereby.  First, the ability-to-pay statute places the burden on the State to prove ability to pay when such ground is the *only* basis alleged in the motion to support adjudication of guilt and revocation of community supervision.  TEX. CODE CRIM. PROC. ANN. art. 42A.751(*i*) (West Supp. 2022).  Here, the State alleged that Appellant violated the terms of his community supervision in eleven respects.  Many of these allegations are unrelated to his failure to pay various fees and costs.  The trial court found that several other allegations in the State's motion were true, such as the allegation that Appellant committed other criminal offenses while on community supervision.  For example, as we discuss below, the State also alleged that Appellant committed a new unlawful-carry-of-a-firearm-by-a-felon offense.[4]  Proof of a single violation is sufficient to support a judgment adjudicating guilt.  *See **Garcia v. State***, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012) (stating that "proof of a single violation will support revocation"); ***Smith v. State***, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009) (applying standard to adjudication of guilt).  Therefore, even if Appellant were unable to exercise his right to testify as to his ability to pay, which was the only express purpose for which he desired to testify, a question we need not reach, he could not have been harmed.  This is because, as we discuss in the next section of this opinion, sufficient evidence supported the adjudication of his guilt and revocation of his community supervision independent of the allegations that he failed to pay the various fees and costs required as part of the terms of his community supervision.

---

[3] The current statute, which is applicable to this case, also provides that the state has the burden to prove by a preponderance of the evidence that the defendant was able to pay and did not pay as ordered by the judge when the *only* allegations in the State's motion to adjudicate guilt and revoke community supervision relate to the failure to pay community supervision fees or court costs among other specified costs.  ***Rushing v. State***, No. 12-21-00052-CR, 2022 WL 868715, at *3 (Tex. App.—Tyler Mar. 23, 2022, no pet.) (mem. op., not designated for publication).  As discussed herein, the State alleged eleven violations of Appellant's community supervision, many of which do not relate to costs or fees.  In any event, the current statute does not identify Appellant's ability to pay as an affirmative defense.

[4] We discuss the sufficiency of this allegation that Appellant committed the offense of unlawful possession of a firearm by a felon while on community supervision in the next section of the opinion.

Appellant's second issue is overruled.

## REVOCATION OF COMMUNITY SUPERVISION

In his third issue, Appellant contends that the trial court abused its discretion by adjudicating his guilt and revoking his community supervision because the State allegedly failed to meet its burden of proof.

### Standard of Review

We review an adjudication of guilt based on a violation of a term or condition of community supervision under an abuse of discretion standard. *See Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013); *Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex. Crim. App. 2006). The State must prove by a preponderance of the evidence that the defendant violated a term or condition of community supervision. *See Hacker*, 389 S.W.3d at 864-65. In this context, "'a preponderance of the evidence' means 'that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his [community supervision].'" *Id.* at 865 (quoting *Rickels*, 202 S.W.3d at 764). The trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.* Proof of a single violation is sufficient to support a judgment adjudicating guilt. *See Garcia*, 387 S.W.3d at 26 (stating that "proof of a single violation will support revocation"); *Smith*, 286 S.W.3d at 342 (applying standard to adjudication of guilt).

### Applicable Law

To establish unlawful possession of a firearm by a felon, the state is required to show that the defendant was previously convicted of a felony offense and possessed a firearm after the conviction but before the fifth anniversary of his release from confinement, community supervision, parole, or mandatory supervision. *See* TEX. PENAL CODE ANN. § 46.04(a)(1) (West Supp. 2022). To support the possession element, the state must show that (1) the accused exercised actual care, control, or custody of the firearm, (2) he was conscious of his connection with it, and (3) he possessed the firearm knowingly or intentionally.[5] *Hutchings v. State*, 333 S.W.3d 917, 920 (Tex. App.—Texarkana 2011, pet. ref'd). A defendant's connection with the firearm must be more than just fortuitous. *See Evans v. State*, 202 S.W.3d 158, 161–62 (Tex.

---

[5] The Texas Penal Code defines "possession" as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West 2021).

11

Crim. App. 2006). His mere presence at the location where a firearm is found is not sufficient, in and of itself, to establish his knowing possession. *See id.* at 162.

With regard to linking a defendant to a firearm found in a vehicle, Texas appellate courts have delineated a set of nonexclusive factors a reviewing court may consider when deciding whether there is sufficient evidence linking a defendant to a firearm found in a vehicle for purposes of establishing possession. *See, e.g.*, **Harris v. State**, 532 S.W.3d 524, 528–29 (Tex. App.—San Antonio 2017, no pet.). The factors include whether: (1) the firearm was in plain view; (2) the defendant was the owner of the vehicle in which the firearm was found; (3) the defendant was in close proximity and had ready access to the firearm; (4) the firearm was found on the same side of the vehicle as the defendant; (5) conduct by the defendant indicated a consciousness of guilt, including extreme nervousness or furtive gestures; (6) the defendant had a special connection or relationship to the firearm; (7) the place where the firearm was found was enclosed; (8) occupants of the vehicle gave conflicting statements about relevant matters; (9) the defendant was the driver of the vehicle in which the firearm was found; (10) other contraband was found on the defendant; (11) the defendant attempted to flee; and (12) affirmative statements connect the defendant to the contraband, including incriminating statements made by the defendant when arrested. *Id.*

Texas courts have recognized that it is not the number of links that is dispositive but rather the logical force of all the evidence. *Evans*, 202 S.W.3d at 162; *Harris*, 532 S.W.3d at 529. The evidence showing these links may be direct or circumstantial. *Swapsy v. State*, 562 S.W.3d 161, 165 (Tex. App.—Texarkana 2018, no pet.). The absence of certain links is not evidence of innocence to be weighed against the links present. *Harris*, 532 S.W.3d at 529.

**Discussion**

In its motion to adjudicate Appellant's guilt, the State alleged that Appellant violated the terms of his community supervision in eleven respects. After a hearing, the trial court found that the State failed sufficiently to prove six of the allegations; it found the remaining five allegations to be "true."

As we have stated, proof of even a single violation will support an adjudication of guilt and revocation of community supervision. *See Garcia*, 387 S.W.3d at 26. We conclude that the State sufficiently proved at least one allegation in its motion—namely that Appellant, while on

community supervision and in violation of the terms thereof, committed the offense of unlawful possession of a firearm by a felon.

Appellant does not dispute that he previously was convicted of a felony or that five years had not elapsed since his conviction of the felony or his release from prison on parole or supervision. Rather, Appellant's chief complaint on this ground appears to be that the State failed to produce the firearm, photos of the firearm, or any other information about the caliber or type of firearm. However, it is not necessary for the State to have produced a firearm before we may sustain a conviction for unlawful possession of a firearm by a felon. *See Tapps v. State*, 257 S.W.3d 438, 445–46 (Tex. App.—Austin 2008) (op. on reh'g), *aff'd*, 294 S.W.3d 175 (Tex. Crim. App. 2009); *see also Hutchings v. State*, 333 S.W.3d 917, 920-22 (Tex. App.—Texarkana 2011, pet. ref'd) (holding eyewitness testimony purporting to have seen defendant with firearm sufficient to prove possession for unlawful possession of firearm by felon); *Castillo v. State*, No. 11-18-00164-CR, 2020 WL 4038853, at *3 (Tex. App.—Eastland July 16, 2020, pet. ref'd) (mem. op., not designated for publication) (same).

The evidence is unclear as to whether Appellant owned the vehicle in which the firearm was found. But even assuming that the firearm was not in his exclusive possession, the evidence sufficiently links the firearm to Appellant, especially given the State's lower burden of proof applicable here.

The evidence showed that Tyler Police Department Officer James Goodman, while working off-duty as a security officer at a local entertainment venue, but while wearing his City of Tyler Police uniform, observed a vehicle park in the fire lane in front of the venue. The driver, who later was identified as Appellant, exited the vehicle and entered the venue. Officer Goodman gave what he termed as a "grace period" to allow Appellant to conduct his business in a reasonable amount of time. After approximately ten to fifteen minutes, the officer approached the vehicle and discovered an open alcoholic beverage in plain view next to what he believed to be, in his experience, a marijuana joint. At that time, Appellant returned to the vehicle. Officer Goodman asked Appellant about what he had observed, and Appellant admitted that it was, in fact, a marijuana joint.

Pursuant to department policy, Officer Goodman called the Tyler Police Department, who sent Officer Bryson Parker to investigate. The officers arrested Appellant and searched the

vehicle. Officer Goodman testified at the hearing that, during the search, he discovered a firearm with the serial numbers removed on the driver's side floorboard area of the vehicle.

Based on both direct and circumstantial evidence, a number of links strongly connect Appellant to this firearm and support the required elements: that (1) Appellant exercised actual care, control, or custody of the firearm, (2) he was conscious of his connection with it, and (3) he possessed the firearm knowingly or intentionally. *See Hutchings*, 333 S.W.3d at 920. The firearm was located in the driver's side floorboard area within Appellant's reach as the only occupant of the vehicle. Appellant also told Officer Goodman that he saw the officer but did not immediately return to the vehicle and move it because "it would be weird for me to walk back to my car. So I figured I'd walk in." Officer Goodman testified that the firearm itself had the serial numbers removed, which indicated to him in his experience that the firearm probably was stolen and did not belong to Appellant. The trial court reasonably could have inferred from this fact that Appellant likely knew that the firearm was stolen, knowingly possessed it, and attempted to conceal his connection to it because of the removed serial numbers. These inferences indicate Appellant's consciousness of guilt in his unlawfully possessing the firearm as a felon. Moreover, Appellant admitted that the marijuana joint belonged to him, and Officer Goodman saw an open container of alcohol in plain view. The subsequent search of the vehicle revealed several substances that the arresting officers believed were illegal narcotics. However, at the time of the hearing, the lab results analyzing the substances were unavailable, which resulted in the trial court's "not true" finding on the allegations in the State's motion related to those substances.

Based on Officer Goodman's testimony, along with the other evidence linking Appellant to the firearm, we conclude that the trial court reasonably could have found that the greater weight of the credible evidence establishes that Appellant violated the terms of his community supervision, which supports its adjudication of his guilt and revocation of his community supervision. *See, e.g.*, *Hacker*, 389 S.W.3d at 865; *Harris*, 532 S.W.3d at 528–29; *Tapps*, 257 S.W.3d at 445–46; *see also Hutchings*, 333 S.W.3d at 920–22.

Appellant's third issue is overruled.

### DISPOSITION

We ***dismiss*** for ***want of jurisdiction*** the portion of Appellant's first issue regarding his entitlement to a hearing on his motion for new trial, the substantive grounds identified in his

motion for new trial, and his contention that the record fails to show statutory compliance with the written jury waiver complaint. Having ***overruled*** the remaining portion of Appellant's first issue, along with his second and third issues, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered April 20, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 20, 2023**

**NO. 12-22-00132-CR**

**JOSEPH ORLANDO WHITAKER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 392nd District Court

of Henderson County, Texas (Tr.Ct.No. CR19-0203-173)

THIS CAUSE came to be heard on the appellate record; and the same being considered, it is the opinion of this Court that this this Court is without jurisdiction of that portion of the appeal from the trial court's judgment regarding his entitlement to a hearing on his motion for new trial, the substantive grounds identified in his motion for new trial, and his contention that the record fails to show statutory compliance with the written jury waiver complaint and that portion of the appeal should be **dismissed**; in all other respects the judgment of the trial court is **affirmed**.

It is therefore ORDERED, ADJUDGED and DECREED by this Court that that portion of the appeal from the trial court's judgment judgment regarding his entitlement to a hearing on his motion for new trial, the substantive grounds identified in his motion for new trial,

and his contention that the record fails to show statutory compliance with the written jury waiver complaint and that portion of the appeal should be **dismissed for want of jurisdiction**; that in all other respects the judgment of the trial court below is hereby **affirmed**; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*